824 of the Revised Statutes, which do not give to the attorney any of the fees now in question. In general, there is no vested right to costs till judgment, and they are only recoverable as taxable by the law in force at the time of taxation. The acts authorizing the removal of causes to this court provide that the cause removed shall proceed in the same manner as if originally commenced here, and there is nothing in those acts which lends support to the defendant's claim for these costs.

CLAREMONT BANK (KITTREDGE v.). See Cases Nos. 7,858 and 7,859.

CLARENCE, The (PERSEE v.). See Case No. 11,016.

CLARENDON (LEWIS v.). See Case No. 8,320.

## Case No. 2,794.

### The CLARION.

[Cited in Cartwell v. The John Taylor, Case No. 2,482. Nowhere reported; opinion not now accessible.]

## Case No. 2,795.

### The CLARION.

[Brown, Adm. 74.][1]

District Court, N. D. Ohio. March, 1859.

JURISDICTION—HAULING OFF STRANDED VESSEL.

Admiralty has jurisdiction of a suit to recover for services of a tug in hauling off a vessel aground, though the same do not amount to a salvage service.

In admiralty. Exceptions to libel for services rendered by libellants' tug John Owen to the brig Clarion, aground upon St. Clair flats, in towing her off the flats and into Detroit river, in October, 1857.

Willey & Carey, for libellants.
Basset & Kent, for claimant.

WILLSON, District Judge. Exceptions were filed to the libel in this case upon the ground that the services set forth were not of a maritime character, and that this court has no jurisdiction. I am satisfied, however, they cannot be sustained. The services of a steam tug, in hauling off a sailing vessel aground, are of a very meritorious description; if the vessel were aground upon a lee shore, exposed to the open lake, they might amount to a salvage service. In any event, they could not be less meritorious than towage, and this court has already held, in the case of The Acadia [Case No. 24], that a lien exists for towage. I think the contract in this case is a maritime one, within the definition laid down in De Lovio v. Boit [Id. 3,776].

Exceptions overruled.

[1] [Reported by Hon. Henry B. Brown, District Judge, and here reprinted by permission.]

CLARISSA ANN, The (GRIGG v.). See Case No. 5,826.

CLARITA, The CLARA. See Cases Nos. 2,787–2,789.

## Case No. 2,795a.

### Case of CLARK.

[Cited in Re Moore, Case No. 9,751. Nowhere reported; opinion not now accessible.]

## Case No. 2,796.

### Ex parte CLARK.

### In re HEALEY.

[1 Spr. 69.][1]

District Court, D. Massachusetts. Nov., 1843.

MARITIME LIENS—DISBURSEMENTS ABROAD BY MASTER.

A master of a ship having expended his own money for necessary disbursements abroad, has a lien therefor, which may be enforced after the return of the ship to her home port.
[Cited in The Eliza Jane, Case No. 4,363; The Tangier, Id. 13,744.]

This was a petition filed under the United States bankrupt law, by W. F. Clark, master of the brig Maria Theresa, to be allowed $83 out of the estate of Mark Healey, a bankrupt and sole owner of the Maria Theresa, for which sum Clark claimed a lien on the vessel. It was agreed that the Maria Theresa sailed from the East Indies for Boston, in the autumn of 1842; that during the voyage, in January, 1843, she put into St. Helena and obtained provisions and supplies, for which the master drew a bill of exchange, for $83, on the owner. It was also agreed that the Maria Theresa did not arrive in Boston until sometime after the 14th of March, 1843, on which day Healey was declared a bankrupt, and his property assigned; and that, immediately upon her arrival, she was taken possession of by Healey's assignee. Meanwhile the draft drawn by Clark at St. Helena was presented, and upon non-acceptance immediately protested, and Clark was notified that he would be held as drawer. He thereupon filed this petition, praying that upon his delivering up the draft, the assignee should be directed to pay the amount in full.

Edwin Howland, for petitioner.
A. H. Fiske, assignee, pro se.

SPRAGUE, District Judge. The question is whether the master of a vessel, having expended his own money for necessary disbursements abroad, has a lien therefor on the vessel, after she has returned to her home port. It is the settled law in this country that he has no lien upon the vessel for his wages (Abb. Shipp. 147, note); but he has a lien on the freight not only for

[1] [Reported by F. E. Parker, Esq., assisted by Charles Francis Adams, Jr., Esq., and here reprinted by permission.]